UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| LAURAL HEMENWAY,<br><br>    Plaintiff,<br><br>v.<br><br>16TH JUDICIAL ATTORNEY'S OFFICE,<br><br>    Defendant. | Case No. 3:15-cv-00997<br><br>Magistrate Judge Alistair E. Newbern |

### MEMORANDUM OPINION

This employment discrimination action arises from pro se Plaintiff Laural Hemenway's employment as an assistant district attorney (ADA) for Defendant the District Attorney General's Office for Tennessee's 16th Judicial District (JDAO). (Doc. No. 73.) Hemenway alleges that JDAO violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e—2000e-17, by terminating her employment based on her sex. (*Id.*)

JDAO has filed a motion for summary judgment, supported by a memorandum of law, a statement of undisputed material facts, affidavits, and exhibits. (Doc. Nos. 89–92-3.) Hemenway has filed a response, memorandum of law, response to JDAO's statement of undisputed material facts, affidavits, and exhibits (Doc. Nos. 94–96-25), and JDAO has filed a reply (Doc. No. 97). Considering the record as a whole, and for the reasons that follow, JDAO's motion for summary judgment will be granted.

I.  **Background**

   A.  **Factual Background**[1]

Hemenway was hired to work as an ADA in the District Attorney General's Office for the 16th Judicial District on March 1, 2000. (Doc. Nos. 91, 92-2, 92-3.) In that role, Hemenway

---

[1] The facts in this section are drawn from JDAO's summary judgment affidavits and exhibits (Doc. Nos. 92–92-3); JDAO's statement of undisputed material facts (Doc. No. 91); Hemenway's response in opposition to that statement (Doc. No. 96-1); and Hemenway's summary judgment affidavits and exhibits (Doc. Nos. 96-3–96-25). Where Hemenway responded to JDAO's statements of fact as disputed but failed to include specific record citations to support her responses or provided record citations that do not support her responses, those facts are deemed undisputed for failure to comply with Federal Rule of Civil Procedure 56(c)(1) and Local Rule 56.01(c)(3). *See* Fed. R. Civ. P. 56(c)(1)(A)–(B) (requiring that "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by" "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact"); M.D. Tenn. R. 56.01(c)(3) ("Each disputed fact must be supported by specific citation to the record.").

Hemenway objects to the form of JDAO's statement of undisputed material facts and argues that she was not properly served with that filing. (Doc. No. 94.) JDAO's statement of undisputed material facts (Doc. No. 91) complies with this Court's Local Rule 56.01(b), which requires that "[e]ach fact must be set forth in a separate, numbered paragraph. Each fact must be supported by specific citation to the record. After each paragraph, the word 'response' must be inserted and a blank space provided that is reasonably calculated to allow the non-moving party sufficient space to respond to the assertion that the fact is undisputed." M.D. Tenn. R. 56.01(b) (statement of undisputed material facts). Contrary to Hemenway's assertions, a moving party is not required to serve its statement of undisputed material facts on the non-moving party before filing a motion for summary judgment. *Id.* (providing that a statement of undisputed material facts must accompany a motion for summary judgment).

Hemenway filed her own statement of undisputed facts (Doc. No. 96-2), but this filing does not comply with the requirements of Local Rule 56.01(b) and will not be considered. *See* M.D. Tenn. R. 56.01(b). This will not unduly prejudice Hemenway because Hemenway's statement largely repeats the facts that she does not dispute from JDAO's statement of undisputed facts (Doc. No. 91) and Hemenway's response in opposition to that statement (Doc. No. 96-1), and will be considered in the context of those filings.

Hemenway also argues that "[t]he Defendant's Certificate of Service is not valid" because "[i]t states that Plaintiff would be notified of" the filing of the motion for summary judgment "by the Clerk's Office['s] electronic filing system" but that she does not receive electronic notifications because she appears pro se. (Doc. No. 94, PageID# 1513–14.) In a case management conference held on November 19, 2020, Hemenway informed the Court that she had not been able to access

reported directly to the District Attorney General for the 16th Judicial District. (Doc. Nos. 91, 92-1, 92-2, 92-3.) Jennings Jones was sworn in as the District Attorney General on September 1, 2014. (Doc. Nos. 91, 92-1, 92-2.)

From September 9 through September 18, 2014, Hemenway prosecuted the criminal rape trial of *State v. Christopher Hernandez*. (Doc. Nos. 91, 92-1, 92-3.) On September 18, 2014, Judge M. Keith Siskin granted defense counsel's motion for a mistrial, stating that Hemenway had "directly violated" an evidentiary ruling (Doc. No. 92-1, PageID# 1469), that the attorneys were "yelling at the top of their lungs at each other" (*id.* at PageID# 1459), and that a "very, very hostile tone . . . ha[d] . . . taken over the[ ] proceedings . . . ." (*id.* at PageID# 1477.). After Judge Siskin granted the mistrial, Hemenway made the following statements in open court: "I feel this is a hostile environment for a female"; "this entire court proceeding has been a violation of my Constitutional Rights as a woman to be treated fairly"; "my rights have not been protected. And it's a hostile work environment when you are forced into that situation, and you don't have recourse"; "I have spoken with other people who have observed the Court today who have said the same thing"; and "the bottom line is that there is a lot of discriminatory things that have been done and said in the courtroom." (Doc. No. 92-1, PageID# 1470–71.)

Jones obtained a recording and a transcript of the last day of trial and spoke with Judge Siskin and the court reporter about Hemenway's conduct in the courtroom before and after the mistrial was granted. (Doc. Nos. 91, 92-1.) Jones concluded that Hemenway's conduct during

---

the Court's CM/ECF electronic filing system. The Court confirmed with the Clerk's Office on November 20, 2020, that Hemenway's electronic filing status was in good standing and active in this case, despite her pro se status. Regardless, Hemenway filed a complete response to JDAO's motion for summary judgment that is timely under this Court's case management order (Doc. No. 83) and Federal Rule of Civil Procedure 6(d). (Doc. Nos. 94, 95.) She has therefore suffered no injury or prejudice from the asserted error.

3

the trial "was unacceptable behavior for an ADA who represented the 16th Judicial District and reported to [him]." (Doc. No. 92-1, PageID# 1296, ¶ 14.) On October 6, 2014, Jones told Hemenway that he had decided to terminate her employment based on her conduct during the *Hernandez* trial and offered her the opportunity to voluntarily resign. (Doc. Nos. 91, 92-1, 96-3.) Hemenway asked for time to consult with counsel. (Doc. Nos. 91, 92-1.) The next day, Hemenway told Jones that she would not resign, and Jones terminated her employment. (Doc. Nos. 91, 92-1, 92-2.) Jones later hired Hugh Ammerman, a man, "who prosecuted the majority of the cases formerly assigned to ADA Hemenway." (Doc. No. 92-1, PageID# 1297, ¶ 22; Doc. Nos. 91, 96-3.)

On October 15, 2015, Hemenway was publicly censured by the Board of Professional Responsibility of the Supreme Court of Tennessee for the statements she made after Judge Siskin declared a mistrial in the *Hernandez* case. (Doc. No. 92-3.) That public censure states:

> Ms. Hemenway was the Assistant District Attorney in a contentious criminal trial. After the Judge granted a mistrial on an evidentiary issue, Ms. Hemenway stated in open court that "I feel this is a hostile environment for a female"; "this entire court proceeding has been a violation of my Constitutional Rights as a woman to be treated fairly"; "my rights have not been protected And it's a hostile working environment when you are forced into that situation, and you don't have recourse"; and "I have spoken with other people who have observed the Court today who have said . . . that there is a lot of discriminatory things that have been done and said in the courtroom."
>
> By the aforementioned acts, Ms. Hemenway violated Rules of Professional Conduct 3.5(e) (conduct intended to disrupt a tribunal), 8.2 (a) (integrity of judicial officials), and 8.4 (d) (prejudice to the administration of justice) and is hereby Publicly Censured for these violations.

(*Id.* at PageID# 1507 (alteration in original).)

### B. Procedural Background

Hemenway retained counsel and initiated this action on October 5, 2015, by filing a complaint alleging that JDAO's termination of her employment violated the First Amendment of

4
Case 3:15-cv-00997   Document 100   Filed 05/24/22   Page 4 of 16 PageID #: 1909

the United States Constitution; Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e—2000e-17; the Americans with Disabilities Act, 42 U.S.C. §§ 12101–12117; Tennessee common law; and the Tennessee Human Rights Act (THRA), Tenn. Code Ann. §§ 4-21-101–4-21-1004. (Doc. No. 1.) From August 10, 2016, through October 4, 2018, the case was administratively closed pending the retrial of *State v. Hernandez*. (Doc. Nos. 29, 32, 43.) While the case was administratively closed, Hemenway's attorney lost his law license and Hemenway moved to appear represent herself going forward. (Doc. Nos. 33, 34.) The case was reopened on October 4, 2018, with Hemenway appearing pro se. (Doc. No. 43.)

On September 24, 2019, Hemenway amended her complaint to include additional factual allegations. (Doc. No. 73.) JDAO then filed a motion to dismiss Hemenway's First Amendment, ADA, THRA, and common law claims (Doc. No. 74), which the Court granted (Doc. No. 78). The only claim that remains pending is Hemenway's claim that JDAO engaged in sex discrimination prohibited by Title VII by terminating her employment. (Doc. No. 73.)

JDAO filed a motion for summary judgment on the Title VII claim. (Doc. No. 89), supported by a memorandum of law (Doc. No. 90); statement of undisputed material facts (Doc. No. 91); the sworn affidavits of Jones (Doc. No. 92-1) and Human Resources Director Laurie Steen (Doc. No. 92-2); a certified transcript of the final day of the *Hernandez* trial (Doc. No. 92-1); and an excerpt of Hemenway's deposition in this action (Doc. No. 92-3). JDAO argues that it is entitled to summary judgment because Jones terminated Hemenway for a legitimate nondiscriminatory reason: "her conduct and behavior during and immediately after the *Hernandez* trial[,]" which Jones believed to be "unacceptable behavior for an ADA who represented his Office." (Doc. No. 90, PageID# 1281–82 (footnote omitted).)

Hemenway responded in opposition to the motion (Doc. No. 94) and filed a memorandum of law (Doc. No. 95), a response to JDAO's statement of undisputed material facts (Doc. No. 96-1), a consolidated list of the facts in JDAO's statement of facts that she does not dispute (Doc. No. 96-2), her own sworn affidavit (Doc. No. 96-3), and numerous exhibits[2] (Doc. Nos. 96-4–96-25). Hemenway argues that "Jones expressly engaged in sexual discrimination by firing her" "because she raised the topic of sexual discrimination" during the *Hernandez* trial. (Doc. No. 95, PageID# 1535.) She also argues that JDAO's stated reasons for her termination are pretextual because she received harsher discipline than Ammerman and another male ADA, John Zimmerman, for engaging in similar conduct. (Doc. No. 95.) Hemenway also disputes the accuracy of the *Hernandez* trial transcript and recording that Jones reviewed before deciding to fire her.

JDAO replies that much of the evidence Hemenway has offered in support of her arguments is inadmissible and that Hemenway has not demonstrated that there is a genuine issue of material fact as to her Title VII claim. (Doc. No. 97.)

---

[2] Hemenway's exhibits include screenshots of text messages between Hemenway and Jones (Doc. Nos. 96-4, 96-6); two excerpts from the *Hernandez* trial transcript (Doc. Nos. 96-13, 96-25); a letter from District Attorney General for the 14th Judicial District Craig Northcott describing a conversation between Jones and other District Attorneys General about Hemenway's conduct during the *Hernandez* trial (Doc. No. 96-14); transcripts of the depositions of Jones (Doc. No. 96-5) and Northcott (Doc. No. 96-15); an excerpt from Hemenway's personnel file (Doc. No. 96-17); several documents related to a workers' compensation action Hemenway filed before the Tennessee Claims Commission (Doc. Nos. 96-7–96-12); a news article related to a case prosecuted by Ammerman (Doc. No. 96-18); a 1989 Tennessee Supreme Court decision regarding a petition for professional discipline against John Zimmerman (Doc. No. 96-19); Zimmerman's JDAO employment records (Doc. No. 96-20); and legal filings and news reports related to Jones's and Zimmerman's involvement in an investigation known as "Operation Candy Crush" (Doc. Nos. 96-21–96-24).

## II. Legal Standard

In resolving a motion for summary judgment, the Court must undertake "the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Under Federal Rule of Civil Procedure 56, a court must grant summary judgment if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law[,]" and a dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

The moving party bears the initial burden of demonstrating that no genuine issues of material fact exist. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets its burden, the non-moving party must "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (citation omitted); *see also Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 282 (6th Cir. 2012) ("Once a moving party has met its burden of production, 'its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.'" (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986))). The parties "must support" their assertions "that a fact cannot be or is genuinely disputed" by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or, alternatively, by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."

Fed. R. Civ. P. 56(c)(1)(A)–(B). Courts must view the record evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 511 (6th Cir. 2009). However, if the moving party carries its initial burden, the non-moving party must show more than "[t]he mere existence of a scintilla of evidence in support of" his or her position. *Anderson*, 477 U.S. at 252. In order to proceed to trial, "there must be evidence on which the jury could reasonably find" for the non-moving party. *Id.*

**III.    Analysis**

The Court must begin by establishing what is not before it at summary judgment. Much of what Hemenway argues in her opposition to JDAO's motion stems from a workers' compensation action that Hemenway filed to address her claim that she notified Jones that she was not well during the *Hernandez* trial and asked him for assistance from others in the office which he did not provide. (Doc. No. 95.) Indeed, it appears that the primary evidence on which Hemenway relies to demonstrate genuine issues of material fact for trial stems from the workers' compensation proceedings (*Id.* at PageID# 1531) (arguing that the "obviously material facts at issue" include that Hemenway "was denied medical treatment for an injury that occurred in the course and scope of her employment" and was not provided "a legally mandated panel of physicians" by the State's third-party claims administrator). Hemenway attempts to link the workers' compensation proceedings to her Title VII claim by arguing that JDAO used "preemptive scorched earth tactics" in the administrative forum to foil her ability to build a case in this one. (*Id.* at PageID# 1532.) But Hemenway has not produced any evidence to support such a connection, and her own speculation about JDAO's malicious intent is not sufficient to render what happened in the workers' compensation proceedings relevant to her Title VII claim. To the extent the workers' compensation proceedings were relevant to other causes of action raised in Hemenway's amended complaint— for example, her ADA claim—those claims are no longer before the Court.

8

Case 3:15-cv-00997    Document 100    Filed 05/24/22    Page 8 of 16 PageID #: 1913

The Court therefore turns to the only remaining claim in this action—that JDAO violated Title VII by discriminating against Hemenway on the basis of sex in terminating her employment.

Title VII prohibits employers from discriminating against any individual with respect to the compensation, terms, conditions, or privileges of her employment because of her race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a)(1). To oppose summary judgment on a Title VII claim, a plaintiff must present direct or circumstantial evidence of discrimination. *See McDaniels v. Plymouth-Canton Cmty. Schs.*, 755 F. App'x 461, 468 (6th Cir. 2018). "Direct evidence is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Golden v. Mirabile Inv. Corp.*, 724 F. App'x 441, 446 (6th Cir. 2018) (quoting *Ondricko v. MGM Grand Detroit, LLC*, 689 F.3d 642, 649 (6th Cir. 2012)). Hemenway has not presented any direct evidence to support her claim. Accordingly, the Court must evaluate the circumstantial evidence she offers to support her Title VII claim under the burden-shifting framework articulated by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Golden*, 724 F. App'x at 446; *McDaniels*, 755 F. App'x at 468. Under the *McDonnell Douglas* framework, a plaintiff relying on circumstantial evidence must first make out a prima facie case of discrimination. *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 706 (6th Cir. 2006). If she does so, "the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its actions." *Gibson v. MGM Grand Detroit, L.L.C.*, 815 F. App'x 48, 54 (6th Cir. 2020) (quoting *Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 658 (6th Cir. 2000)). If the employer meets its burden, the plaintiff must "prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Kubik v. Cent. Mich. Univ. Bd. of*

*Trs.*, 717 F. App'x 577, 581 (6th Cir. 2017) (quoting *Tex. Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 253 (1981)).

### A. Hemenway's Prima Facie Case of Sex Discrimination

To establish a prima facie case of sex discrimination, Hemenway must show that: (1) she was a member of a protected class; (2) she was qualified for the position in question; (3) she suffered an adverse employment action; and (4) she was replaced by someone outside the protected class or was treated differently from similarly situated, non-protected employees. *Id.* (quoting *Wright*, 455 F.3d at 707). JDAO "concedes that [Hemenway] establishes a circumstantial prima facie case" because she "is: (1) a female; (2) who, while reporting to . . . Jones, was qualified for her ADA position to try complex jury cases; (3) who was terminated by . . . Jones from her ADA position; and (4) who was replaced by a male ADA (Hugh Ammerman), who is outside of her protected class." (Doc. No. 90, PageID# 1281 (footnote omitted).) The burden therefore shifts to JDAO to offer "'a legitimate, nondiscriminatory reason for'" Jones terminating Hemenway's employment. *Gibson*, 815 F. App'x at 54 (quoting *Cline*, 206 F.3d at 658).

### B. JDAO's Asserted Legitimate Nondiscriminatory Reason

JDAO argues that Hemenway was terminated from her employment because of "her conduct and behavior during and immediately after the *Hernandez* trial." (Doc. No. 90, PageID# 1281.) JDAO cites Jones's sworn affidavit stating that he learned of Hemenway's conduct "[f]rom reviewing the court room tape and transcript" and speaking with Judge Siskin and the court reporter who covered the *Hernandez* trial. (Doc. No. 92-1, PageID# 1295, ¶ 12.) Specifically, JDAO states that Jones learned that:

1. [Hemenway] interrupted both the trial judge and opposing counsel, talking over them both.

2. She contributed to creating an undignified environment for the case through her tone and personal attacks between herself and opposing counsel.

3. She was yelling at opposing counsel at the top of her lungs.

4. She argued with both the judge and defense counsel, denying she had violated the court's evidentiary ruling.

5. She addressed Judge Siskin in open court with the following comments after he granted a mistrial in the case:

> "I feel this is a hostile environment for a female"; "this entire court proceeding has been a violation of my Constitutional Right as a woman to be treated fairly"; "my rights have not been protected. And it's a hostile working environment when you are forced into that situation, and you don't have recourse"; and "I have spoken with other people who have observed the Court today who have said . . . that there is a lot of discriminatory things that have been done and said in the courtroom."

(Doc. No. 90, PageID# 1282 (second alteration in original) (citations omitted).)

Jones states that he "determined that ADA Hemenway's conduct both during the course of the trial and after the mistrial was declared was unacceptable behavior for an ADA who represented the 16th Judicial District and reported to [Jones]" and that he therefore "terminated ADA Hemenway on October 7, 2014, for unacceptable behavior and conduct in the court room during the course of the *State v. Christopher Hernandez* trial and after the mistrial was declared." (*Id.* at PageID# 1296, ¶¶ 14, 19.) JDAO has articulated a legitimate, nondiscriminatory reason for Jones's decision to fire Hemenway.

C. **Hemenway's Asserted Pretext**

If the employer meets its burden at step two of the *McDonnell Douglas* framework, the plaintiff must then prove that the reasons offered by the employer were a pretext for discrimination by showing "(1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate the employer's action, or (3) that the proffered reasons were insufficient to motivate the employer's action." *Miles v. S. Cent. Hum. Res. Agency, Inc.*, 946 F.3d 883, 888 (6th Cir. 2020) (quoting *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 (6th Cir. 2009)). "Put simply, the 'commonsense' question here is: 'did the employer fire the employee for the stated reason or not?'"

*Pelcha v. MW Bancorp, Inc.*, 988 F.3d 318, 326 (6th Cir. 2021) (quoting *Chen*, 580 F.3d at 400 n.4).

Hemenway first argues that the fifth reason JDAO gives for her termination—her statements to Judge Siskin about her belief that she had experienced sex discrimination in the courtroom—cannot serve as a legitimate basis for her termination. (Doc. No. 95.) Hemenway argues that she "violated no policy, statute or rule by expressing her concerns. But because she raised the topic of sexual discrimination[,] DA Jones expressly engaged in sexual discrimination by firing her." (*Id.* at PageID# 1535.) Hemenway thus concludes that "[a]ny argument that this justified [her] being fired or denied medical benefits is pretextual." (*Id.*)

But the conclusion Hemenway promotes is not automatic. An employee's "'protest of an unlawful employment practice'" is not covered by Title VII if that protest "'so interferes with the performance of [her] job that it renders [her] ineffective in the position for which [she] was employed." *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1312 (6th Cir. 1989) (quoting *Rosser v. Laborers' International Union, Local Number 438*, 616 F.2d 221, 223 (5th Cir. 1980)). Thus, "[a]n employee is not protected [by Title VII] when [she] violates legitimate rules and orders of [her] employer, disrupts the employment environment, or interferes with the attainment of [her] employer's goals." *Id.* (citing *Unt v. Aerospace Corp.*, 765 F.2d 1440, 1446 (9th Cir. 1985)). "Such behavior gives an employer a legitimate, non-discriminatory reason for the adverse employment action." *E.E.O.C. v. Kidney Replacement Servs., P.C.*, No. 06-13351, 2007 WL 1218770, at *4 (E.D. Mich. Apr. 25, 2007). Hemenway has offered no evidence to create a genuine issue of material fact that Jones's stated reason for terminating her employment is pretextual. Instead, the record evidence supports JDAO's argument that Jones terminated Hemenway's employment because these comments, together with the other behavior she exhibited

during trial, "'render[ed] [Hemenway] ineffective in the position for which [s]he was employed[,]'" and "interfere[d] with the attainment of h[er] employer's goals."[3] *Booker*, 879 F.2d at 1312 (quoting *Rosser*, 616 F.2d at 223).

Hemenway next asserts that JDAO's proffered reasons have no basis in fact because the audio recording Jones reviewed before making the decision to terminate her is "a digitally enhanced, unofficial recording" and that the transcript of the last day of the *Hernandez* trial "seem[s] to be inaccurate." (Doc. No. 95, PageID# 1533.) In support of this allegation, Hemenway cites a statement from her own affidavit that "[t]he alleged audio . . . does not accurately reflect what happened in court during or after the Hernandez trial." (Doc. No. 96-3, PageID# 1558, ¶ 52.) In making this argument, Hemenway argues that JDAO's proffered legitimate nondiscriminatory reason has no basis in fact. "For a plaintiff's challenge to the factual basis of an employer's proffered termination rationale to establish pretext, the plaintiff must provide evidence that the employer's allegations never happened." *Miles*, 946 F.3d at 888–89 (citing *Chattman v. Toho Tenax Am., Inc.*, 686 F.3d 339, 349 (6th Cir. 2012)). While Hemenway argues generally that the audio recording and certified transcript of the last day of the *Hernandez* trial are inaccurate, she

---

[3]  The record shows that the Board of Professional Responsibility of the Supreme Court of Tennessee publicly censured Hemenway for her comments that the courtroom was a hostile work environment, that the proceedings violated her Constitutional rights, and that "a lot of discriminatory things . . . have been done and said in the courtroom." (Doc. No. 92-3, PageID# 1507.) The Board found that Hemenway's comments violated Rule of Professional Conduct 3.5(e), which prohibits lawyers from "engag[ing] in conduct intended to disrupt a tribunal[;]" Rule of Professional Conduct 8.2(a), which prohibits lawyers from "mak[ing] a statement that the lawyer knows to be false or that is made with reckless disregard as to its truth or falsity concerning the qualifications and integrity of . . . a judge;" and Rule of Professional Conduct 8.4(d), which provides that "[i]t is professional misconduct for a lawyer to" "engage in conduct that is prejudicial to the administration of justice[.]" Tenn. Sup. Ct. R. 8, RPC 3.5(e), 8.2(a), 8.4(d). While the censure was issued after Hemenway's employment was terminated and therefore could not have motivated Jones's decision, it is relevant to support a finding that Hemenway's comments in the courtroom exceeded the bounds of acceptable attorney conduct and that Jones's decision to terminate her employment on that basis is not pretextual.

has not identified any specific inaccuracies or provided any admissible evidence to support that argument. Hemenway has not identified a genuine issue regarding the factual basis of JDAO's proffered reason.

Third, Hemenway argues that her firing was pretextual because two male JDAO employees, Ammerman and Zimmerman, engaged in similar conduct and experienced no negative employment actions. (Doc. No. 95.) "To show pretext on disparate treatment, a plaintiff must provide evidence that 'employees outside the protected class[ ] were not disciplined even though they engaged in substantially identical conduct to that which [the employer] contends motivated its discipline [of the plaintiff]." *Pelcha*, 988 F.3d at 328 (alterations in original) (quoting *Miles*, 946 F.3d at 893). To determine whether an employee outside the protected class may be compared to the plaintiff, courts "consider whether the employee: (1) 'dealt with the same supervisor,' (2) was 'subject to the same standards,' and whether they (3) 'engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.'" *Id.* (quoting *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998)).

Hemenway argues that Ammerman "engaged in the exact same behavior" that prompted Hemenway's termination "when a mistrial was declared in a similar case and he was not fired." (Doc. No. 95, PageID# 1534.) In support of this argument, Hemenway cites a news article stating that a judge declared a mistrial in a 2017 trial prosecuted by Ammerman after "Ammerman permitted the jury to hear prejudicial information . . . ." (Doc. No. 96-18, PageID# 1829.) The article also states that "Ammerman attempted to respond" to a statement by the defense attorney, but the judge "cut [Ammerman] off and told [him] not to speak while the judge made his ruling." (*Id.* at PageID# 1830.) This article establishes, at best, circumstances similar to Hemenway's in

14
Case 3:15-cv-00997   Document 100   Filed 05/24/22   Page 14 of 16 PageID #: 1919

two regards: first, that Ammerman caused a mistrial in a case he prosecuted and, second, that he was instructed by the judge not to speak while the judge was speaking. But Jones testified in his deposition that he did not fire Hemenway for causing a mistrial and that "a mistrial in and of itself is not something that [he] would fire someone for." (Doc. No. 96-5, PageID# 1608.) Instead, Jones testified that Hemenway was fired for the behavior "for which [she] received a bar complaint and w[as] handed a public censure" (*id.*), which included "interrupt[ing] both the trial judge and opposing counsel, talking over them both"; contributing to a "tone between the attorneys" that "created an undignified environment for the case"; yelling at defense counsel "at the top of [her] lungs"; "arg[uing] with both the judge and defense counsel, denying she had violated the court's evidentiary ruling"; and "address[ing] Judge Siskin in open court with comments" regarding perceived sex discrimination (Doc. No. 92-1, PageID# 1295–96). The evidence Hemenway offers is insufficient to create a genuine dispute of fact that Ammerman was treated differently in circumstances sufficiently similar to those surrounding Hemenway's termination.

Hemenway also points to a 1989 Tennessee Supreme Court decision affirming disciplinary action the Board of Professional Responsibility took against Zimmerman for speaking to the press about pending criminal proceedings. (Doc. No. 96-19.) Hemenway argues that Zimmerman was hired by JDAO after this professional discipline and receiving bar complaints, but that those disciplinary actions "were not considered as adversely affecting [ ] Zimmerman's ability to work as an assistant district attorney." (Doc. No. 95, PageID# 1537.) The misconduct Hemenway identifies occurred years before Zimmerman began working for JDAO and is not sufficiently similar to the conduct for which Hemenway was censured to constitute a valid comparator. Hemenway has not shown that she and Zimmerman were "subject to the same standards" at the

time each was censured or "'engaged in the same conduct'" leading to the discipline. *Pelcha*, 966 F.3d at 328 (quoting *Ercegovich*, 154 F.3d at 352).

Hemenway has not presented evidence from which a reasonable jury could find that JDAO's rationale for terminating her employment is pretext for discrimination. Accordingly, JDAO is entitled to summary judgment on Hemenway's Title VII claim.

## IV. Conclusion

For the foregoing reasons, JDAO's motion for summary judgment (Doc. No. 89) will be granted by separate order.

It is so ORDERED.

_____
ALISTAIR E. NEWBERN
United States Magistrate Judge